OPINION. HaRRON, Judge: Petitioner contends that a block of 16,000 shares of stock is to be valued for gift tax. The contention appears to be made because on the same day the total shares given away aggregated 16,000 shares. It is held that 4 separate gifts were made of 4 blocks of stock of 4,000 shares, each. Helvering v. Hutchings, 312 U. S. 393; Lawrence C. Phipps, 43 B. T. A. 1010; affd., 127 Fed. (2d) 214; certiorari denied, 317 U. S. 645; John J. Newberry, 39 B. T. A. 1123. The only remaining question is the fair market value of each of the gifts. Respondent determined that the Armstrong Cork stock had a value of $37.25 per share on the date of gift, which value is 95^ cents higher than the value which petitioner claims. Petitioner contends that the value of the gifts should be determined on the basis of $36.295 per share, after making allowance for the size of the block of stock involved in each gift and the ability of the market on the date of gift to absorb the quantity of stock involved under the ordinary circumstances, where market prices are determined by “voluntary” buying by a public uninformed about the quantity of stock available for purchase on a given day or over a period of time. The respondent has followed a formula for valuing stock which is set forth in his regulations. He has taken the mean between the highest and lowest quoted selling prices on the date of the gift and held that it represents the fair market value per share of the stock. Regulations 108, sec. 86.19 (c). Respondent did not object to the introduction by the petitioner of evidence relating to matters other than the stock exchange prices of the Armstrong Cork stock. Cf. Havemeyer v. United States, 59 Fed. Supp. 537, 538; Commissioner v. Stewart, 153 Fed. (2d) 17. The question of fair market value of property is a question of fact. •Under the regulations of the Commissioner, supra, the mean between the highest and lowest quoted selling prices on the date of the gift shall be considered as the fair market value per share of stock in the case of stocks listed on a stock exchange; but in cases where it is established that the above stated formula does not reflect the fair market value of stock, then other relevant facts and elements of value shall be considered in determining fair market value. After consideration of all of the evidence in this case, it has been concluded that the respondent’s method of valuation does not reflect the fair market value of the stock in question. Therefore, consideration has been given to other factors. Petitioner relies upon the testimony and opinions of 3 expert witnesses in addition to the evidence relating to the sale on the same date the gifts were made, October 26, 1943, of a block of 4,000 shares of Armstrong Cork Co. stock under a “Special Offering” on the New York Stock Exchange. Respondent did not introduce any evidence, and he called no witnesses. The evidence shows that the regular market on the stock exchange for Armstrong Cork stock on October 26 would not have absorbed a block of 4,000 shares or 4 blocks of 4,000 shares at the prices at which small lots of stock changed hands, i. e., at $37.25 per share; but that the market price would have been driven downward, because of the quantity of stock involved in each gift and in the 4 gifts, 95% cents below the mean between the high and low prices on October 26, at least. The market for the stock on the valuation date was thin. On October 26, aside from the “Special Offering” of a block of 4,000 shares, only 600 shares were traded; and on October 25 only 300 shares were traded, at 37% high and 37% low. The market prices on October 25, in our opinion, are a better indication of how a voluntary market would react than the stock exchange quotations on October 26, because of the fact that on the latter day most of the transactions on the market were made under the “Special Offering,” which resulted in sales of 4,000 shares at a fixed price.[2] Under the modern marketing method of a “Special Offering” through the facilities of the Exchange, an entire block of stock is offered at a fixed price per share, and the market price for all shares in the block is thereby stabilized at the approved offering price.[3] One of petitioner’s expert witnesses, a man of long experience in marketing stocks, pointed out the distinction between a “voluntary” market and a “solicited” market. Where the stock exchange officials approve a “Special Offering” under the rules of the exchange, the market is a “solicited” market in the transactions involving the “Special Offering” stock. The purchases are solicited by salesmen. When the market is “voluntary,” the buyers are not solicited and are not aware of how much stock is available for purchase. Respondent’s reliance upon the market prices on the exchange on October 26 does not take into consideration the fact that there was a “Special Offering” on that date. There is nothing in the record to show that the respondent was aware of the fact that there was a “Special Offering” on October 26 in making his determination that the value of .the gifts was $37.25 per share. The evidence shows, further, that officials of the New York Stock Exchange were consulted just prior to October 26 on the matter of the effect of marketing a block of 4,000 shares of Armstrong stock in the ordinary way, in a voluntary market, on current market prices reflected by transactions involving small lots of stock. They concluded that the regular market could not absorb 4,000 shares “within a reasonable time and at a reasonable price or prices,” and, accordingly, consented to the “Special Offering” of 4,000 shares on October 26. This evidence is entitled to receive weight, and consideration has been given to it. As was stated in Heiner v. Crosby, 24 Fed. (2d) 191, it is proper to give consideration to whether the circumstances under which sales are made at a certain price were unusual, and to the kind of market in which the sales were made. Also, there is the unrefuted testimony of one of petitioner’s expert witnesses that each block of gift stock of 4,000 shares, if offered over a reasonable period of time after October 26, would not have fetched an aggregate of more than $145,180 for an entire block, which would represent an average price per share of $36,295, if that much. See Bull v. Smith, 119 Fed. (2d) 490; and Henry F. du Pont, 2 T. C. 246, 257. The evidence shows that during November 1943 quoted market prices for Armstrong stock showed a downward trend, and that the Dow-Jones Industrial Average showed declines in market prices. The fair market value of each gift of Armstrong stock on October 26, 1943, has been found to be $145,180, which represents $36,295 per share. This is 95*4 cents below the mean between the highest and lowest quoted selling prices on the exchange on that date. In arriving at the above value of each gift, consideration has been given to all of the evidence, and no single factor has been controlling of the finding made. Consideration has been given to the price at which the blocks of stock could be sold over a reasonable period of time; to the size of the block of stock involved in each gift; to the fact that 4 gifts were made of blocks of stock of 4,000 shares each; to the fact that the market for the stock was thin; and to the fact that on the same date the gifts were made there was a “Special Offering” of 4,000 shares of the same stock on the New York Stock Exchange. Cf. Sewell L. Avery, 3 T. C. 963, 970; and Robert L. Clause, 5 T. C. 647; affd. per curiam, 154 Fed. (2d) 655. Respondent’s determination is reversed. Decision will be entered imder Rule 50. Under Rule 491 of the New Vork Stock Exchange, a “Special Offering” is designated as a “fixed price offering.” See “Report on Secondary Distributions of Exchange Stocks,” February 8, 1942, published by the Federal Securities and Exchange Commission.